OPINION
Appellant Ana Munday appeals from the May 26, 1999, Judgment Entry of the Stark County Common Pleas Court, Juvenile Division, permanently terminating her parental rights and granting permanent custody of Majestic Munday, appellant's daughter, to the Stark County Department of Human Services for purposes of adoptive placement.
 STATEMENT OF THE CASE AND FACTS
Majestic Munday, born on February 16, 1999, is the daughter of appellant Ana Munday. The alleged father of Majestic is either Kim Munday, appellant's husband, or Anthony Ware. Neither of these men has established paternity and appellant does not know the whereabouts of either. The Stark County Department of Human Services [hereinafter SCDHS] became involved with appellant in 1996 when custody of one of appellant's children, Chastity Munday, was granted to SCDHS. Subsequently, in 1997, appellant's second child, Destiny Munday, was placed in SCDHS' Long Term Foster Care Program. Majestic Munday, the child at issue in the case sub judice, tested positive for barbiturates shortly after her birth. As a result, Majestic suffered symptoms consistent with withdrawal from drugs. Therefore, Majestic was removed pursuant to Juv. R. 6 upon release from the hospital. On February 17, 1999, SCDHS filed a Permanent Custody Complaint alleging that, inter alia, Majestic Munday "cannot and should not be placed with either parent for a reasonable time" and "that permanent commitment of the child is in the child's best interest." An adjudicatory hearing was held on May 6, 1999. The trial court found the child to be a neglected child based on the following findings of fact: "DHS worker testified no baby supplies and no housing. One child was removed and a second child is with biological father. No males have come forward to support care or visit this child. Mother testified she is in Stark County Jail on a theft and forgery charge. Mother has had drug involment [sic]. Mother did do pre-natal care. Mother [sic] records show use of cocaine during pregnancy." The first part of the evidentiary on the request for permanent custody was also held on May 6, 1999, by agreement of counsel. The evidentiary on the request for permanent custody was completed on May 17, 1999. On May 26, 1999, the trial court filed its written Findings of Fact and Conclusions of Law. A Judgment Entry was also filed on May 26, 1999, which incorporated the Findings of Fact and Conclusions of Law and granted an Order terminating all of appellant's parental rights, privileges and responsibilities in regard to Majestic Munday. The trial court found that "Majestic Munday cannot and/or should not be placed with either parent at this time or in the foreseeable future" and that it is in the "best interest of Majestic Munday, date of birth February 16, 1999, that her permanent custody be granted to the Stark County Department of Human Services." Judgment Entry of Stark County Court of Common Pleas, Family Court Division, May 26, 1999. In its Findings of Fact and Conclusion of Law, the trial court further found that ". . . the parents have failed continuously and repeatedly for a period of six (6) months to substantially remedy the conditions causing the child to be placed outside her home" and that [b]oth parents have demonstrated a lack of commitment toward Majestic Munday by failing to regularly support, visit, care and communicate with her when able to do so. The parents have shown an unwillingness to provide an adequate permanent home for Majestic Munday." Permanent custody was granted to the Stark County Department of Services. Appellant raises the following assignments of error in regard to the May 26, 1999, Judgment Entry:
ASSIGNMENT OF ERROR I
 THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
ASSIGNMENT OF ERROR II
 THE JUDGMENT OF THE TRAIL [SIC] COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
I II
In appellant's first and second assignment of error, appellant contends that the trial court's decision that Majestic could not or should not be placed with appellant within a reasonable period of time and that the granting of permanent custody to SCDHS was in the best interests of the child was against the manifest weight and sufficiency of the evidence. We disagree. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. V. Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. R.C.2151.353(A)(4), in relevant part, provides: "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: (4) Commit the child to the permanent custody of a public children services agency . . . if the court determines in accordance with division (E) of Section 2151.414 [2151.41.4] of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of Section 2151.414
[2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child. . . ."
R.C. 2151.414(E), in relevant part, provides:
"(E)(1) Following the placement of the child outside the chid's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. . . .
(E)(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
We have set forth the language in R.C. 2151.414(E)(1) and (4) because those appear to be the subsections the trial court found were applicable to the case sub judice. However, after a careful look at the complaint and amended complaint filed by the SCDHS and the trial court's findings, we determine that the language of (E)(1) was not used in the complaints nor in the trial court's findings. The language actually used in the complaints and in the trial court's findings contains the additional language that the parents "failed continuously and repeatedly for a period of six (6) months to substantially remedy the conditions. . . ." (Emphasis added.) The "six month" language was in a previous version of2151.414 but was deleted as of September 18, 1996. However, since the "six month" language was in the complaints and that is what the appellant received notice of, we find that SCDHS had to prove that allegation to prevail on that portion of its complaint. But, it was impossible for the SCDHS to prove that allegation by clear and convincing evidence in the case sub judice. The parents could not have failed for a period of six months following the placement of Majestic outside her home to remedy the conditions causing removal, when Majestic had only been removed by court order three months prior to the permanent custody hearing. Therefore, we agree with appellant and find that the trial court's finding of fact as to the "six month" language is unsupported by the evidence. The trial court did make another finding under 2151.414(E) that, if supported by the evidence, would support the trial court's determination that the child cannot be placed with either parent at this time or in the foreseeable future or should not be placed with either parent. The trial court found: "Both parents have demonstrated a lack of commitment toward Majestic Munday by failing to regularly support, visit, care and communicate with her when able to do so. The parents have shown an unwillingness to provide an adequate permanent home for Majestic Munday." The testimony presented at the permanent custody evidentiary established that no one had established paternity of the child and that no one presumed to be or claiming to be the father had shown any interest in reunifying with Majestic. In addition, the testimony established that appellant was twenty-one years of age and had been involved with SCDHS for four to five years. The appellant has four children. The oldest is six years old and appellant has not seen him for three years. The next oldest child, Chastity, was granted into the permanent custody of SCDHS and has been adopted. The next oldest child, Destiny, is in the temporary custody of SCDHS and appellant went a year without visiting Destiny. Marge Kazlauskas, a Family Services worker with SCDHS, has worked with appellant for three and a half years trying to help appellant obtain and retain the skills needed for appropriate parenting. Transcript of Proceedings at 39. Case plans have been in place setting forth the things that appellant needed to do. Appellant's case plans have included the requirements that she obtain her own stable housing, complete Goodwill parenting, obtain a psychological evaluation and, since the birth of Destiny, obtain a drug and alcohol evaluation of Quest. Appellant has never maintained housing for any length of time in the last three and a half years. Ms. Kazlauskas testified that the longest time appellant has maintained any residence was in the apartment appellant had recently moved into. Q. So those approximately a month to six weeks have been the longest she's stayed in one place? A. Correct. Transcript of Proceedings at 40
While appellant had obtained this apartment after Majestic's birth, appellant was shortly thereafter arrested. She was in custody at the time of the permanent custody trial with charges of theft and forgery pending, and had been in jail since April 14, 1999. Appellant, herself, admitted that she had been staying at a friend's for two weeks when Majestic was born. Transcript of Proceedings at 33. Appellant was living with another friend prior to that. Appellant claims that that was for six or seven months. The continuing case plan also called for appellant to obtain a psychological evaluation and counseling at Human Development and an evaluation at Quest, including compliance with their recommendations. The psychological evaluation started on one prior occasion and was not completed. Appellant had started a second psychological evaluation at the time of the hearing but it had not been completed. A Quest evaluation had been completed at the time of the hearing but counseling for drug abuse was not concluded due to her recent arrest and incarceration. The Quest evaluation was originally placed in the case plan due to alcohol abuse problems in conjunction with SCDHS involvement with Majestic's older sibling, Destiny. However, during appellant's pregnancy with Majestic, a concern arose regarding cocaine. According to Quest records, appellant admitted using cocaine up until one week before Majestic's birth. The Quest evaluation diagnosed appellant as dependent upon cocaine. Lastly, appellant's case plan included attendance at and completion of the Goodwill Parenting Program. Appellant had signed up for the classes three times, but had never completed the program. The appellant has made some initial steps to become an appropriate parent but Ms. Kazlauskas summed up her concerns regarding the appellant in response to a question by appellant's counsel:
 Q. "Do you see anything in her actions in regards to this child that would lead you to believe the department can work with her to get this child back?
 A. If Ana would follow through I could maybe see her doing that but I have a real concern about the follow through because the history of three years has been no follow through with anything."
Transcript of Proceedings at 41.
Majestic could not be placed with her father within a reasonable time. Neither the putative father nor appellant's husband contacted appellant or SCDHS regarding Majestic. The men were served by publication and failed to appear for the hearings. In fact, the whereabouts of both men were unknown at the time of the hearings. Based on the preceding discussion, we find that there was clear and convincing evidence presented that appellant has shown an unwillingness to provide an adequate permanent home for Majestic. Appellant has shown an unwillingness generally to be a parent. Therefore, we find that there was sufficient competent, credible evidence to show by clear and convincing evidence that Majestic Munday cannot be placed with either parent within the reasonable future and should not be placed with either parent. However, a determination that Majestic cannot be placed with either parent at this time or in the foreseeable future or should not be placed with either parent is insufficient in and of itself to award permanent custody of a child to an agency and to terminate parental rights. In this matter, the trial court found, pursuant to R.C. 2151.414(D), that it was in Majestic's best interest for parental rights to be terminated. Such section provides as follows: "In determining the best interest of a child . . . the court shall consider all relevant factors, including, but not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; Ms. Kazlauskas of SCDHS testified regarding the best interests of Majestic. She stated that Majestic was born February 16, 1999, and was three months old, at the time of the hearing. Majestic was a child with no physical, mental or psychological problems. She was developmentally on-target. Majestic was placed with her two half sisters, in a foster home that would like to adopt her. Majestic's father is believed to be Anthony Ware. Appellant was and continues to be married to another man, Kim Munday. Appellant does not know the whereabouts of either man. Likewise, Ms. Kazlauskas testified that she has had no contact with either of these men and does not know their whereabouts. Appellant testified that she had three other children. None of these children are in her custody. Majestic was removed from appellant's care at birth. Ms. Kazlauskas testified that appellant had visited Majestic approximately three to four times and that these visits had gone well. However, based upon appellant's consistent history of failure to follow through with services, as well as the ongoing problems with stable, independent housing, parenting, and drug abuse, Ms. Kazlauskas felt that the child should be placed for adoption. In a report filed with the trial court, the child's Guardian ad Litem recommended that permanent custody be granted to SCDHS. The Guardian ad Litem further recommended that adoption proceedings be initiated. Therefore, we conclude that there was sufficient competent, credible evidence to establish by clear and convincing evidence that it was in Majestic Munday's best interest to terminate the parental rights of the appellant (as well as of the putative fathers) and grant permanent custody to SCDHS. Indeed, the evidence demonstrates that it will be the only way to establish a legally secure permanent placement for Majestic. Based on the foregoing, we find that the trial court's findings that Majestic cannot and should not be placed with any parent within a reasonable period of time and that it was in Majestic's best interest for appellant's parental rights to be terminated were supported by clear and convincing evidence. We further find that the trial court's granting of permanent custody of Majestic to the Stark County Department of Human Services is supported by competent, credible evidence and is not against the manifest weight of the evidence. Appellants assignments of error are overruled.
Based on the foregoing, the Judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By Edwards, J. Wise, P.J. and Gwin, J. concurs